**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHELLE MONCAYO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| GOODVETS VETERINARY SERVICES | ) | Magistrate Judge |
| LLC and GOODVETS SERVICES OF | ) | |
| STREETERVILLE LLC, | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Michelle Moncayo, by and through her attorneys, Pedersen & Weinstein LLP,

for her Complaint against Defendants, GoodVets Veterinary Services LLC and GoodVets

Services of Streeterville LLC, states as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action under the Civil Rights Act of 1964, 42 U.S.C. Section

2000e et seq., as amended by the Civil Rights Act of 1991, ("Title VII") to challenge

Defendants' unlawful discrimination against her based on her sex and pregnancy.  Plaintiff also

asserts claims under the Family and Medical Leave Act ("FMLA") and the Illinois Human

Rights Act ("IHRA").

## JURISDICTION AND VENUE

2.      Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343, and principles of pendent

and supplemental jurisdiction.

3.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §

1391(a).

**PARTIES**

4.    Plaintiff, Michelle Moncayo, was formerly employed by Defendants in Chicago, Illinois.  She began her employment in April 2021 and was fired unlawfully on November 20, 2024.

5.    Defendant GoodVets Veterinary Services LLC is a full-service veterinary practice.  Headquartered in Chicago, Illinois, it owns and operates approximately 80 animal hospitals throughout the United States, including Defendant GoodVets Services of Streeterville LLC, where Plaintiff worked.

6.    Both Defendants controlled terms and conditions of Plaintiff's employment and were her employer, individually and collectively.  Both Defendants were also involved in the discrimination against Plaintiff described herein.

7.    At all times relevant to this Complaint, Defendants – individually and collectively – employed more than 15 employees and were engaged in an industry affecting commerce.

**FACTUAL ALLEGATIONS**

*Background*

8.    Plaintiff was initially hired by Defendants as a Veterinarian Technician.  In recognition of her commendable job performance and qualifications, Defendants promoted her to Hospital Operations Manager in April 2024.

9.    Throughout her tenure, Plaintiff enjoyed her job and performed it well, as evidenced not only by her promotion, but also by the positive feedback she consistently received from supervisors, colleagues and patients.  For example, Plaintiff was described as "a pleasure to work with," a "wonderful teacher," and "an incredibly hard worker."  She was also praised by management for "doing a great job," demonstrating "[g]reat embodiment of [Defendants'] core

2

values," "constantly thinking of new ways to help improve efficiency in the hospital" and for "go[ing] out of her way to help with additional tasks outside of her role."

10. Further, at least until the events described below, Plaintiff was never given any reason to believe that her performance was unsatisfactory or that her job was in jeopardy; quite to the contrary, based on her experience and contributions, she had every reason to anticipate a long and successful career with Defendants.

***Defendants Discriminated Against Plaintiff On The Basis Of Gender And Pregnancy***

11. Despite her commendable job performance and dedication to the organization, Defendants discriminated against Plaintiff because of her gender and pregnancy.

12. To be sure, Plaintiff's work situation changed dramatically once she announced her pregnancy on or about October 15, 2024. Indeed, on October 30, 2024, just two weeks after disclosing her pregnancy, and despite her exemplary performance, Plaintiff was abruptly called into a meeting with her supervisors, Hospital Operations Associate Kelly Gibbons ("Gibbons") and Medical Director Kris Piland-Rice ("Piland-Rice"), and told that her job performance was unacceptable. She was then given two choices: accept a demotion and transfer to another location or be placed on a performance improvement plan ("PIP").

13. Plaintiff was stunned by the confrontation, but chose the latter option, knowing that there was no valid basis for a PIP, let alone a termination.

14. As she anticipated, the PIP that Defendants then issued to Plaintiff was utterly baseless. Among its contrived claims was the accusation that Plaintiff was failing to enforce the company's attendance policy (against a disabled employee with a mass in her heart who was taking occasional job-protected medical leave and that human resources was fully aware of), was not maintaining 80% availability on the doctor's schedules (when it was well known that the

office was short-staffed and Plaintiff routinely had to adjust the schedule on a daily basis for matters outside her control), that she had not communicated performance issues to an employee in writing and so Piland-Rice had to instead (when in fact Plaintiff had sent a draft write-up to Piland-Rice for review as was suggested she do and Piland-Rice then inexplicably sent the draft write-up directly to the employee herself), and that she had not prioritized an issue that Gibbons previously told her not to prioritize.

15. Further, Defendants issued the sham PIP with no intention of allowing Plaintiff to complete it. In fact, when issuing the pretextual PIP, Gibbons and Piland-Rice told Plaintiff she had only 14 days to complete it or she would be fired, knowing that she would be out on PTO for 5 of those days. When Plaintiff pointed this out, Gibbons and Piland-Rice dismissively told her she needed to figure it out. Later, when Plaintiff asked for guidance on one of the issues in the PIP, Gibbons pointedly refused to assist and then used that issue as one of the justifications to claim Plaintiff failed the PIP. In short, the PIP clearly was manufactured solely to create a (pretextual) justification to fire Plaintiff.

### Defendants Unlawfully Fired Plaintiff

16. On November 20, 2024, just months after awarding Plaintiff a merit-based promotion, but within one month of Plaintiff disclosing her pregnancy, Defendants fired her, claiming that she failed to meet the expectations of the PIP. Plaintiff questioned the termination and asked for clarification about the decision, but Human Resources Associate Monica Dirk refused to provide any information and said the decision was final. Shortly after firing Plaintiff, Defendants replaced her with a man.

17. Defendants' claim of poor performance is otherwise belied by the fact that they knew the location where Plaintiff worked had lost its Medical Director in August 2024. As a

4

result of not having a dedicated and full-time Medical Director on staff, the hospital not only lacked consistent leadership, but Plaintiff was also expected to take on some of the tasks of a Medical Director, tasks that were outside her role but that she was happy to perform. To defend against her claims, however, Defendants now contend that explaining those new tasks to Plaintiff equates to her having unsatisfactory performance. This bad faith claim has no merit.

18. Given all the circumstances, including Plaintiff's success and recent promotion, the contrived nature of the PIP and the company's interference with her meeting its objectives, the timing and pretextual nature of her termination, and the fact that she was replaced by a man, it is obvious that Defendants fired Plaintiff because of her gender and pregnancy, in violation of federal and state law.

19. Notably, Defendants' decision to fire Plaintiff because of her pregnancy is consistent with their other discriminatory practices. For example, Plaintiff is aware that Defendants unlawfully fired other employees, including the disabled employee referenced above, and that they pushed out another woman following her pregnancy.

***Defendants Violated The FMLA***

20. By the adverse actions described above, including firing Plaintiff because she planned to take a maternity leave, Defendants also violated the FMLA. Defendants engaged in this unlawful conduct in retaliation for Plaintiff needing and intending to take an FMLA leave, and to interfere with her ability to take the leave.

***Defendants Failed to Exercise Reasonable***
***Care To Prevent and Correct Unlawful Conduct***

21. Defendants' management directed, encouraged, and participated in the above-described unlawful conduct. Further, Defendants failed to exercise reasonable care to prevent and correct promptly any gender discrimination and harassment. Plaintiff did not unreasonably

5

fail to take advantage of any preventive or corrective opportunities provided by Defendants or to avoid harm otherwise.

22. The discrimination and retaliation described above was consistent with Defendants' standard operating procedure.

***Plaintiff Timely Filed Charges of Discrimination and Retaliation***

23. Plaintiff timely filed charges of discrimination and unlawful retaliation with the EEOC. Plaintiff subsequently requested and received her Notices of Right to Sue.

24. The EEOC cross-filed Plaintiff's charges of discrimination with the Illinois Department of Human Rights ("IDHR") pursuant to the work-sharing agreement between the EEOC and IDHR. This Court has supplemental jurisdiction over Plaintiff's IHRA claims pursuant to 28 U.S.C § 1367(a).

***Plaintiff Suffered Damage***

25. As a direct and proximate result of the unlawful conduct Plaintiff experienced, she has suffered extreme emotional and mental distress.

26. Plaintiff has lost wages, compensation and benefits as a result of Defendants' unlawful conduct.

27. Plaintiff's career and reputation have been irreparably damaged as a result of Defendants' unlawful conduct.

28. Plaintiff suffered embarrassment and humiliation as a result of Defendants' unlawful conduct. Plaintiff suffered loss of enjoyment of life, inconvenience and other non-pecuniary losses as a direct result of Defendants' unlawful conduct, as well as incurring attorneys' fees and costs.

*Punitive Damages*

29.     Defendants acted and/or failed to act with malice or willfulness or reckless indifference to Plaintiff's rights. The conduct alleged herein was willful and wanton and justifies an award of punitive damages.

## COUNT I

### GENDER AND PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII

30.     Plaintiff realleges paragraphs 1 through 29 and incorporates them by reference into Count I of this Complaint.

31.     Title VII makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment, on the basis of sex, including on the basis of pregnancy, childbirth, or related medical conditions.

32.     By the conduct as alleged herein, Defendants subjected Plaintiff to gender and pregnancy discrimination in violation of Title VII.

## COUNT II

### UNLAWFUL CONDUCT IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

33.     Plaintiff realleges paragraphs 1 through 32 and incorporates them by reference into Count II of this Complaint.

34.     The FMLA entitles eligible employees to a 12-week leave, including leave on an intermittent basis, during any 12-month period for a serious health condition. Plaintiff was an eligible employee.

35.     The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the Act.

36.     By the conduct as alleged herein, Defendants violated the FMLA.

7

37.     Defendants' actions toward Plaintiff constitute willful violations of the FMLA.

## COUNT III

### RETALIATION IN VIOLATION OF THE
### FAMILY AND MEDICAL LEAVE ACT

38.     Plaintiff realleges paragraphs 1 through 37 and incorporates them by reference into Count III of this Complaint.

39.     The FMLA makes it unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice it makes unlawful. Similarly, the FMLA makes it unlawful for any employer to discharge or discriminate against anyone for taking part in proceedings or inquiries under the FMLA.

40.     By the conduct as alleged herein, Defendants violated the FMLA.

41.     Defendants' actions toward Plaintiff constitute willful violations of the FMLA.

## COUNT IV

### GENDER AND PREGNANCY DISCRIMINATION IN VIOLATION OF THE IHRA

42.     Plaintiff realleges paragraphs 1 through 41 and incorporates them by reference into Count IV of this Complaint.

43.     The Illinois Human Rights Act ("IHRA"), 775 ILCS 5/2-102(A), makes it unlawful to discriminate against any individual in the terms, privileges or conditions of employment on the basis of sex.

44.     The IHRA, 775 ILCS 5/2-102(I), also makes it unlawful for an employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of pregnancy, childbirth, or medical or common conditions related to pregnancy or childbirth.

45. By the conduct as alleged herein, Defendants subjected Plaintiff to gender and pregnancy discrimination in violation of the IHRA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against the Defendants as follows:

a. Declare that the acts and conduct of Defendants violate Title VII, the FMLA, and the IHRA;

b. Award Plaintiff the value of all compensation and benefits lost as a result of Defendants' unlawful conduct;

c. Award Plaintiff the value of all compensation and benefits she will lose in the future as a result of Defendants' unlawful conduct;

d. In the alternative to paragraph (c), reinstate Plaintiff with appropriate promotions and seniority and otherwise make Plaintiff whole;

e. Award Plaintiff compensatory damages;

f. Award Plaintiff punitive damages;

g. Award Plaintiff liquidated damages;

h. Award Plaintiff prejudgment interest;

i. Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

j. Award Plaintiff such other relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all questions of fact raised by the Complaint.


Dated:  February 27, 2026

Respectfully submitted,

By:

*/s/Erika Pedersen*
Attorney No. 6230020


Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
231 S. LaSalle Street
Suite 2100
Chicago, IL  60604
(312) 322-0710